**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RAOUL LORJUSTE,

      Petitioner,

v.                                                          Case No. 3:19-cv-1068-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

**ORDER**

## I.    Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 18).[1] He challenges a 2011 state court (Duval County, Florida) judgment of conviction for sexual battery upon a person less than 12 years old (three counts) and lewd and lascivious molestation (one count). He is serving a mandatory term of life imprisonment. Respondents filed a Response (Doc. 21) with exhibits (Docs. 21-

_____

[1] On May 4, 2021, the Court granted Petitioner's request to consider his December 19, 2018 Petition as the operative Petition and denied Respondents' motion to dismiss. See Order (Doc. 17).

1 to 21-5; Resp. Ex.). Petitioner filed an Amended Reply (Doc. 26). This case is ripe for review.[2]

## II.   **Governing Legal Principles**

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. ne2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional

4

issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine

5

of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged

> his defense so that he was denied fundamental
> fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523

U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u> at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on

> the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).[3]

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

---

[3] This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id.</u> (internal quotations and citations omitted). To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal").

"[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

### III.   <u>Analysis</u>

### A. Ground One

According to Petitioner, the trial court erred by allowing the admission of child hearsay evidence. Doc. 18 at 4-5. Petitioner claims such evidence was presented via a video recording of the child-victim being interviewed by a child protective services agent. <u>Id.</u> at 4. Petitioner argues that "[t]he credibility of the hearsay was at issue here as the record demonstrates the victim never made allegations against the Petitioner until being admonished by her mother after the victim's mother discovered her in bed with her older cousin." <u>Id.</u> Petitioner claims the victim's accusations against Petitioner "were made under duress in response to the intense interrogation from adults." <u>Id.</u> Additionally, Petitioner challenges the trial court's decision to admit the video because the victim allegedly falsely accused another individual before accusing Petitioner, thus showing the victim's unreliability. Doc. 26 at 9. He also argues that the video was cumulative evidence because the victim testified at trial. Doc. 18 at 5.

Before trial, the state filed a notice of intent to introduce child hearsay statements. <u>See</u> Resp. Ex. A at 33. The trial court conducted a hearing before granting the state's notice, finding that the statements were "from a source that is trustworthy, and the time, content and circumstances of the statements reflect the safeguards of reliability." <u>Id.</u> at 39; <u>see</u> Resp. Ex. G at 5-30 (hearing transcript). On direct appeal, Petitioner raised the same claim as he does in

Ground One of the Petition. <u>See</u> Resp. Ex. H. The state filed an answer brief. <u>See</u> Resp. Ex. I. The First District Court of Appeal per curiam affirmed Petitioner's judgment without issuing a written opinion. <u>See</u> Resp. Ex. J.

Although Petitioner concludes in the Petition that the admission of the child hearsay evidence violated his rights under the Fifth, Sixth, and Fourteenth Amendments, his argument focuses on how the trial court's decision violated Florida law. Notably, his brief on direct appeal focused solely on Florida law and did not cite to or discuss any federal law.

To the extent that Petitioner urges that the trial court erred under Florida law when it allowed the state to present this evidence, this allegation is not cognizable on federal habeas review. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" <u>Alderman v. Zant</u>, 22 F.3d 1541, 1555 (11th Cir. 1994); <u>see also</u> <u>Baxter v. Thomas</u>, 45 F.3d 1501, 1509 (11th Cir. 1985) (recognizing that a "federal habeas corpus case is not a vehicle to correct evidentiary rulings"); <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1543-44 (11th Cir. 1984) ("Federal courts reviewing habeas corpus petitions are not empowered to correct erroneous evidence rulings of state trial courts[,]" unless "a state trial court's evidence rulings deny a habeas petitioner fundamental constitutional protections."). Thus, Petitioner's underlying challenge to the trial

court's ruling on the admissibility of the child hearsay evidence generally is not proper for this Court's consideration, and as such, Ground One is due to be denied.

Even assuming Petitioner presents an exhausted federal claim, the claim is without merit. The child-victim also testified at trial and was subject to cross-examination. Petitioner has failed to show his trial was rendered fundamentally unfair by the admission of the child-hearsay testimony. The Court, therefore, will deny Ground One.

## B. Ground Two

Petitioner claims that his appellate counsel was ineffective for filing an appeal without a complete record. Doc. 18 at 6. He alleges that there were portions of his jury selection that were omitted from the record on appeal. Id. Respondents argue this claim is unexhausted. Doc. 21 at 24. According to Respondents, "Petitioner raised a complaint about appellate counsel's delay in supplying him with jury selection transcripts in his Motion to Toll Time to File Petition for Writ of Habeas Corpus Rule 9.141(D), Ineffective Assistance of Counsel, however he did not raise the issue here that appellate counsel was ineffective for filing his appeal with an incomplete record on appeal." Id. In his Reply, Petitioner asserts that he raised this claim in his "petition alleging ineffective assistance of [appellate] counsel . . . before Florida's First District Court of Appeal, case number 1D15-0940." Doc. 26 at 10.

A review of the First DCA's docket reflects that Petitioner filed a motion to toll time on February 25, 2015 (as referenced by Respondents), and the First DCA granted Petitioner until April 30, 2015, to file a sworn petition alleging ineffective assistance of appellate counsel. See Lorjuste v. State of Florida, No. 1D15-0940 (Fla. 1st DCA 2015); see also Resp. Ex. K (Petitioner's motion to toll time). The docket further shows that on May 5, 2015, Petitioner filed a petition alleging ineffective assistance of appellate counsel. See Lorjuste, No. 1D15-0940. On May 27, 2015, the First DCA per curiam denied "[t]he petition alleging ineffective assistance of appellate counsel . . . on the merits." Resp. Ex. L.

Respondents did not include a copy of the May 5, 2015 petition alleging ineffective assistance of appellate counsel in the record submitted to this Court. Thus, the Court is unaware of what claims Petitioner raised in that petition. The Court, therefore, declines to find that Ground Two is unexhausted and will address the claim on the merits.

Petitioner argues that his appellate counsel was ineffective for failing to ensure the record on appeal included the jury selection transcript because, according to Petitioner, his trial counsel was ineffective during jury selection. As found in Ground Nine below, this Court finds that trial counsel was not ineffective during jury selection. Because the underlying ineffective assistance of trial counsel claim has no merit, appellate counsel cannot be deemed deficient for failing to raise a non-meritorious issue. Ground Two is due to be denied.

## C. Ground Three

Petitioner argues that his appellate counsel was ineffective "for failing to raise a claim of fundamental error when an alternate juror deliberated with the jury." Doc. 18 at 8 (emphasis and capitalization omitted). He asserts that if appellate counsel had raised the issue, the First DCA would have reversed his conviction. Id.

As with Ground Two, Respondents contend this claim is unexhausted. Doc. 21 at 32-33. However, for the same reasons stated above, the Court declines to find this claim unexhausted and instead addresses it on the merits.

At the conclusion of the trial, the trial judge instructed the jury and then the following occurred:

> THE COURT: . . . [Y]ou'll retire to the jury room with the exception of Mr. Moore. You were the alternate so your duty just ended. I want to talk to you before you leave, but you have any personal property back there?
>
> THE VENIREMAN: Yes, sir.
>
> THE COURT: If you would step back there and get that and come back out. Y'all don't start any deliberations until such time as he leaves.

Resp. Ex. C at 312-13. There is no further discussion with the alternate juror on the record.

There was no basis in the record for appellate counsel to argue a fundamental error occurred based on Petitioner's allegation that the alternate

juror deliberated with the jury. The transcript of the trial does not reflect the alleged conversation between the alternate juror and the judge; thus, appellate counsel had no support for such an argument. Thus, appellate counsel cannot be deemed deficient. And even assuming deficient performance, Petitioner has not shown prejudice. He fails to show a reasonable probability that the outcome of his appeal would have been different had appellate counsel raised this issue. Therefore, Ground Three is without merit and due to be denied.

**D. Ground Four**

According to Petitioner, his trial counsel was ineffective "for failing to call two key defense witnesses that would have established the alleged victim falsified her testimony that would have resulted in an acquittal." Doc. 18 at 9 (emphasis and capitalization omitted). He claims his counsel should have called Markel Mills and Kenny Vickers as witnesses. Id.

Petitioner raised this claim in his state court proceeding filed under Florida Rule of Criminal Procedure 3.850. The state court denied the claim:

> Defendant contends counsel was ineffective for failing to call two witnesses: Markel Mills ("Mills") and Kenny Vickers ("Vickers").
>
> A.   Markel Mills
>
> Defendant states Mills[] is the victim's cousin and that, if called, Mills would have testified he and the victim were engaged in an intimate relationship for two years. Defendant states Mills would also testify that when the victim's mom found the two in bed together

on November 5, 2009, the victim concocted the story against Defendant to "take the heat off" Mills.

Counsel did not call Mills as a witness at trial. (Ex. E at 3-4.) However, Mills was a focal point in the trial. (Ex. E at 15-17, 25-26, 45-46, 53, 67-70, 78, 84-88, 89, 91-93, 125, 152-56, 254-56, 262-63, 266-67, 279-80.) Counsel indeed argued the victim only told her mom about Defendant after her mom found Mills naked in bed with the victim because the victim was trying to protect Mills. (Ex. E at 25-26, 262-63, 266-67, 269.) Indeed, the fact that Mills was discovered naked in bed with the victim on the night of her disclosure was discussed during the victim's testimony, the victim's mother's testimony, and the presentation of the victim's CPT interview. The only new information Defendant now contends Mills could have provided was information that he and the victim had been in an intimate relationship for two years.

This Court finds counsel was not deficient for failing to call Mills to testify when the majority of his purported testimony would have been cumulative to the evidence presented. <u>Jones v. State</u>, 998 So. 2d 573, 586 (Fla. 2008) ("We have repeatedly held that counsel is not ineffective for failing to present cumulative evidence."). Moreover, to the extent Mill's testimony would not have been cumulative to the evidence presented, this Court finds no reasonable probability it would have changed the outcome of the proceeding. Defendant is, thus, not entitled to relief on this Ground.

B.    Kenny Vickers

Defendant alleges Vickers, the fiancé of the victim's aunt, would have testified the victim accused him of the same crimes as she accused Defendant and that her accounts of the incidents were "almost verbatim" against both Defendant and Vickers. Defendant maintains Vickers could have testified the victim accused him of committing the acts during the

17

same period as Defendant. Lastly, Defendant states Vickers could have testified that after waiting three years to be tried, his charges were dropped after he insisted he would call Mills as a witness at trial.

Initially, this Court notes that at trial, the judge engaged in a colloquy with Defendant regarding the witnesses he wished to present. The trial judge inquired as to whether the defense would be calling any witnesses at trial. (Ex. E at 182.) After the defense was given a ten-minute recess to discuss the issue, defense counsel stated that she had previously listed two witnesses, but after explaining the advantages and disadvantages of calling them to Defendant, Defendant agreed not to call the witnesses. (Ex. E at 182-83.) Counsel further testified that Defendant mentioned two other witnesses, his pastor and a woman from the Department of Children and Families, but again after discussing the consequences of calling them, Defendant agreed not to call them and would simply testify in his own defense. (Ex. E at 183.) Therefore, Defendant made no mention of wishing to call Vickers as a witness. Rather, Defendant concluded to the trial court that he would be the only person to testify in his defense. (Ex. E at 190.)

Additionally, prior false accusations made by a victim are inadmissible as any such instances would be improper impeachment. See Pantoja v. State, 59 So. 3d 1092, 1096-98 (Fla. 2011) (finding victim's prior false accusation against uncle was inadmissible because it was improper impeachment). Therefore, Vickers' testimony would be inadmissible, and counsel cannot be deemed ineffective for failing to present inadmissible testimony. See Owen v. State, 986 So. 2d 534, 546 (Fla. 2008) ("Trial counsel cannot be deemed ineffective for failing to present inadmissible evidence.") (citing Pietri v. State, 885 So. 2d 245, 254 (Fla. 2004)). Accordingly, Defendant is not entitled to relief. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . .

> to address both components of the inquiry if the
> defendant makes an insufficient showing on one.").

Resp. Ex. O at 6-8 (footnote omitted). Petitioner appealed, and the First DCA

per curiam affirmed the state court's denial without issuing a written opinion.

See Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential

standard for federal court review of state court adjudications. At the conclusion

of the state's case, defense counsel advised the court that the defense had

previously listed two witnesses, but after consultation with Petitioner, the

defense did not intend to call the two witnesses. Resp. Ex. B at 183. Defense

counsel further advised that Petitioner mentioned calling his pastor and a

woman from DCF, but after discussing the positives and negatives with counsel,

Petitioner decided that he would be his only witness. Id. The trial court placed

Petitioner under oath and a discussion about whether Petitioner wanted his

pastor to testify followed. See id. at 183-89. The trial court took a recess so

counsel could further discuss the issue with Petitioner. See id. at 189. After the

recess, Petitioner advised the trial court that he would be his only witness. Id.

at 190.

The record supports the state court's conclusion. Therefore, upon

thorough review of the record, this Court concludes that the state court's

adjudication of this claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Four.

### E. Ground Five

Petitioner argues that his trial counsel was ineffective "for failing to investigate and obtain the alleged victim's school records that would have shown she had perfect attendance and impeached her trial testimony." Doc. 18 at 11 (emphasis and capitalization omitted). He claims that the victim's school records would have proven she was "lying when she testified that she was taken to the hotel instead of being at school." Id.

Petitioner raised this claim in his Rule 3.850 proceeding. The state court denied it:

> Defendant suggests that many of the victim's allegation[s] supposedly occurred when the other children who lived in the home were at school. Defendant maintains counsel should have obtained the victim's school records to show she had perfect attendance and, if she missed any school, Defendant would have been able to recall his whereabouts for a potential alibi for that day.

> While the victim did testify that no one was at the house on the occasions Defendant abused her at the house, she did not indicate that it was because her siblings were at school. (Ex. E at 32-33, 43-44.) Therefore, it is not clear that these events occurred on school days or, even if they were school days, whether

20

> the events happened during the hours in which a school would be open. Therefore, the victim's school records would be irrelevant. Even if there was an absence from school, there would be no indication that that was a date that an incident occurred. Therefore, this Court does not find counsel was deficient in failing to obtain the records and does not find a reasonable probability the outcome of the proceeding would have been different if those records had been obtained.

Resp. Ex. O at 15. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. See Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Five.

## F. Ground Six

Petitioner claims his trial counsel was ineffective "for failing to investigate and present a reasonable defense as to why the alleged victim could describe with great detail the places where the alleged abuse occurred." Doc. 18 at 12 (emphasis and capitalization omitted). He argues that "[h]ad counsel thoroughly investigated, she would have found that [the victim] basically lived

at her Aunt Phoebe's residence (Petitioner's home) and had a free run of the house," and the hotel room the victim described was simply "a basic hotel room" similar to which the victim had recently stayed in. Id. at 12-13.

Petitioner raised this claim in his Rule 3.850 proceeding, and the state court denied it:

> Defendant asserts counsel's failure to investigate led him to overlook the reasons why the victim could describe the places where the abuse occurred. Defendant suggests the victim was able to describe his bedroom because she often spent time at the house and would have the ability to roam the house while she was there. He then states the victim could describe a hotel room because she stayed in a hotel room during a visit to Disney World and during a visit to Washington.

> This Court notes that even the victim's mother acknowledged at trial that the victim spent a lot of time at Defendant's house. (Ex. E at 58.) Therefore, this fact was not kept from the jury and the jury had this information to consider during its deliberations. As for the ability to describe a hotel room, this Court finds that even if counsel was able to elicit this testimony from the victim at trial, there is no reasonable probability the outcome of the proceeding would have been different. Accordingly, Defendant is not entitled to relief on Ground Eight.

Resp. Ex. O at 15-16. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. See Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough

review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Six.

### G. Ground Seven

Petitioner argues his trial counsel was ineffective for failing "to object and file a motion for arrest of judgment where the State argued multiple and distinct acts that support the jury reached an un-unanimous verdict as to Counts One and Three." Doc. 18 at 14. Specifically, he argues:

> In relation to count one, during the State's case in chief, the State presented through E.D.'s detailed testimony of a specific incident alleged to have occurred at a hotel where the Petitioner was described to have tried inserting his penis into her vagina. E.D. also gave testimony of a separate and distinct incident alleged to have occurred at her Aunt Phoebe's house where the Petitioner was described to have tried to insert his penis into her vagina. Moreover, the State argued during closing that "she (E.D.) said it happened on numerous occasions and at different locations. She told you it happened both at her Aunt Phoebe's house as well as at the hotel." In this case it is clear that the State charged the Petitioner with [only] one count of sexual battery by penetration and or union of the Petitioner's penis and E.D.'s vagina, but presented evidence of two entirely separate incident[]s separated by both time and place. Because counsel failed to object and allowed the State to tell the jury it could convict

the Petitioner for either instance of sexual battery by penetration and/or union of Petitioner's penis with E.D.'s vagina, the State compromised the jury's ability to render a unanimous verdict. The State's actions make the unanimity uncertain as several members could have determined the hotel incident constituted sexual battery, while the others could have determined it was at Aunt Phoebe's house rather than agreeing that the same incident constituted sexual battery.

. . . Count Three's verdict is also in question for the same reasons outlined in Count One. The State again presented the argument of specific incidents in which the union with the Petitioner's penis and the victim's mouth happened at the hotel and Aunt Phoebe's house and that the jury could find either one constituted sexual battery by penetration of E.D.'s mouth. Again, as in Count One the State only charged the Petitioner with one count of sexual battery by penetration of E.D.'s mouth with his penis. Because counsel allowed the State [to] continue without objection it compromised the jury's ability to render a unanimous verdict and thus, prejudiced the outcome by allowing the jury to consider separate incidents in which to convict the Petitioner.

Id. at 14-15.

Petitioner raised this claim during his Rule 3.850 proceeding. The state court denied it:

Defendant maintains the State improperly argued multiple acts for each offense. Specifically, Defendant alleges the State made multiple improper arguments that suggested each offense occurred more than one time. (Ex. E at 245, 246, 247.) Defendant asserts these arguments could have potentially led to a non-unanimous jury verdict.

24

To find Defendant guilty of the sexual batteries upon the victim, the State had to prove that the victim was under twelve years of age, Defendant was eighteen years of age or older, and that he committed an act where his penis penetrated or made union with the victim's vagina, an act where Defendant's mouth had union with the victim's vagina, and Defendant's penis penetrated or had union with the victim's mouth. (Ex. F.) The State was not required to prove the exact day on which the offenses occurred. Indeed, the victim testified to multiple incidents at trial. (Ex. E at 31-36, 35-42, 43-45.) It would be sufficient for the jury to find Defendant committed the acts at one of the times described by the victim. This Court, therefore, finds the State's arguments were not improper. Moreover, the Court finds this claim speculative as to Defendant's suggestion that these arguments would have caused a non-unanimous jury verdict. See Maharaj, 778 So. 2d at 951. Counsel, therefore, cannot be held ineffective for failing to object to the arguments.

Resp. Ex. O at 18-19. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. See Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. The record supports the state court's conclusion. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an

unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Seven.

Even assuming the state court's determination is not entitled to deference, this claim has no merit. "In child sexual abuse cases, Florida law permits the state to charge by grouping multiple offenses together in a single count. This practice 'actually lessens the potential penalty to the defendant' because there is less chance of potential consecutive sentencing on single offenses." Cramer v. Sec'y, Dep't of Corr., No. 5:16-cv-489-OC-02PRL, 2019 WL 4861036, at *9 (M.D. Fla. Oct. 2, 2019) (quoting Whittingham v. State, 974 So. 2d 616, 618-19 (Fla. 4th DCA 2008)); Sirias v. Sec'y, Dep't of Corr., No. 2:14-CV-23-FTM-29CM, 2015 WL 5440336, at *22 (M.D. Fla. Sept. 15, 2015) ("Florida law permits the state to charge a defendant in child sex abuse cases by grouping multiple offenses together into a single count."). During closing argument, the state summarized the victim's testimony, noting that she testified "that this defendant tried to put his penis inside of her vagina and she said that it happened on numerous occasions and happened at different locations." Resp. Ex. C at 245; see id. at 246 ("[The victim] stated and told you that he tried - - that he did touch his penis to her vagina on numerous occasions."); id. at 247 ("[The victim] gave graphic details in that CPT video as to what he would have her do to him on more than one occasion."). The state did not encourage a non-

26

unanimous verdict. Rather, the state summarized the evidence to support each charge in accordance with Florida law.

The trial court then instructed the jury on each count. Specifically, as to count one, the trial court instructed that the state must prove beyond a reasonable doubt that the victim was less than 12 years old, Petitioner committed an act upon the victim in which his penis penetrated or had union with the victim's vagina, and that Petitioner was 18 years old or older. Resp. Ex. C at 299-300. Similarly, as to count three, the trial court instructed that the state must prove beyond a reasonable doubt that the victim was less than 12 years old, Petitioner committed an act upon the victim in which his penis penetrated or had union with her mouth, and Petitioner was 18 years old or older. See id. at 300-01. The jury was further instructed that they must follow the law as given and their verdict must be unanimous. See id. at 305-07, 311.

Considering the record, the Court finds that trial counsel was not deficient for failing to object to the state's closing argument. Even assuming deficient performance, Petitioner has not shown prejudice. As such, Ground Seven is due to be denied.

### H. Ground Eight

According to Petitioner, his trial counsel was ineffective because she "informed the jury that a previous trial had[] been held and failed to request a curative jury instruction on the matter." Doc. 18 at 16.

Petitioner raised this claim in his Rule 3.850 proceeding,[4] and the state court denied it:

> Defendant alleges counsel was ineffective for eliciting testimony from a witness that there had been a previous trial. Defendant states that, upon mention of the first trial, counsel should have moved for mistrial based on the prejudice of jurors knowing there had previously been another trial.
>
> Under the invited error doctrine, "a party cannot successfully complain about an error for which he or she is responsible. . . [.]" Flowers v. State, 149 So. 3d 1206, 1207-08 (Fla. 1st DCA 2014). Additionally, "[a] motion for mistrial should be granted only when the error is deemed so prejudicial that it vitiates the entire trial, depriving the defendant of a fair proceeding." Floyd v. State, 913 So. 2d 564, 576 (Fla. 2005).
>
> Here, defense counsel was the person who mentioned a "previous trial." (Ex. E at 51.) Counsel, therefore, could not have moved for mistrial based on an error for which she was responsible. Moreover, the only mention of the previous trial was the contested statement where counsel asked the victim, "You've previously testified in this case, correct?" (Ex. E at 51.) This Court finds such a limited statement did not vitiate the entire proceeding. Accordingly, any motion for mistrial would have been denied for both reasons, and counsel cannot be ineffective for making such a motion. See Schoenwetter, 46 So. 3d at 546. Defendant is, therefore, not entitled to relief.

---

[4] In Petitioner's Rule 3.850 motion, he argued that counsel should have immediately moved for a mistrial or "[a]t a minimum, counsel should have requested a curative instruction to the jury advising that previous proceedings occurred and had no effect or should have no[] effect [on] the jury's deliberations." Resp. Ex. N at 39.

Resp. Ex. O at 19-20. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. See Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Eight.

Alternatively, the Court finds this Ground has no merit. During defense counsel's cross-examination of the victim, the following exchange occurred:

> Q. You've previously testified in this case, correct?
>
> A. Yes, ma'am.
>
> . . . .
>
> [Defense Counsel]: Your Honor, I'm showing the witness her prior trial transcript and I'm just pointing to the point that she testified to before.

Resp. Ex. B at 51-52. Even assuming counsel was deficient for acknowledging in front of the jury that there had been a prior trial, Petitioner has not shown

prejudice. Considering the testimony and evidence presented at trial, the Court finds Petitioner has failed to show a reasonable probability exists that but for counsel's alleged error, the result of the proceeding would have been different. As such, Ground Eight has no merit and is due to be denied.

## I. Ground Nine

Petitioner claims his trial counsel was ineffective "for failing to conduct any real voir dire examination allowing the state to empanel its own pre-selected jury." Doc. 18 at 17 (emphasis and capitalization omitted). He contends that because counsel failed to examine the potential jurors, she "had no basis for determining whether the jurors were competent to s[i]t as an unbiased juror." Id. at 18.

Petitioner raised this claim in his Rule 3.850 proceeding, and the state court denied it:

> Defendant maintains counsel was ineffective for failing to conduct voir dire of the prospective jury. Defendant suggests that since counsel did not question the prospective jurors, the State was able to decide who sat on the jury.
>
> Ineffective assistance of counsel allegations based on counsel's alleged failure to conduct a meaningful voir dire implicate a defendant's constitutional right to a trial by a fair and impartial jury. Solorzano v. State, 25 So. 3d 19, 23-24 (Fla. 2d DCA 2009). An attorney must question prospective jurors so counsel can reasonably assess whether "the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the

instructions on the law given by the court." Id. at 24 (citing Mansfield v. State, 911 So. 2d 1160, 1172 (Fla. 2005)). Counsel cannot, however, be held ineffective for failing to ask the prospective jury cumulative questions. See Johnson v. State, 921 So. 2d 490, 503-04 (Fla. 2005) (finding because the prosecutor and court had adequately questioned jurors, counsel could not be deficient for failing to repeat questioning). Additionally, it is pure speculation for a defendant to assert that further questioning would have revealed any juror bias. See Green v. State, 975 So. 2d 1090, 1105 (Fla. 2008) (denying claim that counsel was ineffective for failing to further voir dire juror as speculative) (first citing Johnson v. State, 903 So. 2d 888, 896 (Fla. 2005); and then citing Reaves v. State, 826 So. 2d 932, 939 (Fla. 2002)); Johnson v. State, 921 So. 2d 490, 503-04 (Fla. 2005) (holding defendant's claim that further questioning of jurors could have exposed more on the jurors' views was speculation that "fails to rise to the level of ineffective assistance of counsel under Strickland.").

In the instant case, the prospective jury was first questioned by the trial court regarding general matters. (Ex. J at 10-33.) The State then engaged in follow-up questioning. (Ex. J at 33-115.) After the trial court and the State had completed their questioning of the venire, counsel asked additional follow-up questions. (Ex. J at 115-22). Defense counsel specifically noted that her voir dire would be short because the State already asked many of the questions the defense wished to have answered. (Ex. J at 115.) Therefore, the record refutes Defendant's allegation that counsel failed to "conduct any examination of any of the jurors." This Court finds that the trial court, the State, and counsel conducted an adequate voir dire of the prospective jury. Moreover, it is clear from the record counsel used that examination to make informed challenges to certain jurors after discussing them with her client as the trial court instructed her to do. (Ex. J at 122-31.) To assert any additional

> questioning would have uncovered some bias is purely speculative and cannot warrant relief under <u>Strickland</u>. <u>See</u> <u>Green</u>, 975 So. 2d at 1105; <u>Johnson</u>, 921 So. 2d at 503-04. Therefore, this Court finds Defendant has not shown deficient performance on the part of counsel or prejudice suffered by Defendant as a result. Accordingly, Defendant is not entitled to relief.

Resp. Ex. O at 20-21. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. <u>See</u> Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. The transcript of the jury selection supports the state court's conclusion. <u>See</u> Resp. Ex. O at 210-344. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Nine.[5]

---

[5] The Court takes judicial notice of Petitioner's sentencing hearing transcript. <u>See</u> <u>State of Florida v. Lorjuste</u>, No. 2010-3752-CF (Fla. 4th Cir. Ct.), Testimony & Proceedings of August 23, 2011, before the Honorable William Wilkes. Notably, at Petitioner's sentencing, it was made clear that he wanted to handpick his jury. His counsel and the trial judge explained that is not how jury selection works. Petitioner's ineffectiveness claim relating to trial counsel's performance during voir dire has no merit.

## J. Ground Ten

Petitioner claims his trial counsel was ineffective "for failing to object and move for a mistrial when an alternate juror deliberated with the jury." Doc. 18 at 19. He alleges that after the trial, the "judge instructed the alternate juror to go into the deliberation room to grab his personal articles, but that the jury was not to deliberate until the alternate juror left the room." Id. at 20. He contends that "after the juror returned from the deliberation room, the juror stated to the judge 'everything is good. They're all going to say the same thing.'" Id. According to Petitioner, his counsel refused to do anything, and the judge immediately cleared the courtroom with the exception of the alternate juror. Id. Petitioner claims this exchange "was also omitted from the record, however, the Court-Smart audio recording" would still reflect the exchange. Id.

Petitioner raised this claim in his Rule 3.850 proceeding, and the state court denied it:

> Defendant maintains counsel was ineffective for failing to object and move for a mistrial based on the alternate juror deliberating with the jury. It is clear from the record, however, that the trial judge informed the alternate juror his jury duty ended before deliberations and required him to grab his belongings from the jury deliberation room before the rest of the jury began deliberating. (Ex. E at 312-13.) Therefore, this Court finds the alternate juror did not engage in deliberations with the jury, and Defendant is not entitled to relief.

Ex. O. at 21-22. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. See Resp. Ex. R.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. The record supports the state court's conclusion. Petitioner's assertion that the state court's audio system would differ from the official transcript is speculative. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Ten.

### K. Ground Eleven

Petitioner claims that the trial court erred by denying his "motion to correct errors and omissions in the voir dire transcripts and motion to preserve evidence." Doc. 18 at 21. He asserts that "[t]here are substantive issues that contained errors within the Petitioner's voir dire proceedings that were recorded by Court-Smart audio that would support the Petitioner's claims that he was not afforded a full and fair trial before an impartial jury, the court committed fundamental errors during the third voir dire and that counsel was

ineffective for failing to conduct any meaningful voir dire of the jury panel before his third trial." Id.

Petitioner filed a motion to correct alleged errors and omissions in the voir dire transcript and a motion to preserve evidence in the state court. The state court denied the motions:

> Defendant filed a motion to correct alleged errors by the court reporter in transcribing the voir dire proceedings of July 18, 2011 and a motion requiring the Clerk of the Courts, the State Attorney, and the Public Defender to preserve all evidence and files related to his case because of his anticipated petition for writ of habeas corpus. Defendant's motions are baseless. Files and evidence are kept by the Clerk and the attorneys in accordance with the Florida Statutes and the rules and regulations governing professional conduct. The transcript of the July 18, 2011 voir dire proceeding is attached as Exhibit "E" to the Court's order denying Defendant's post-conviction relief. There is nothing that authorizes a correction of an official trial transcript based on a Defendant's unfounded assertions that the transcript is wrong.

Resp. Ex. U at 4. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion. See Resp. Ex. X.

This Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence presented. Regardless, this claim has no merit. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Eleven.

In light of the foregoing, it is

**ORDERED**:

1.     The Petition (Doc. 18) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of September, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 9/9
c:
Raoul Lorjuste, #J45191
Counsel of Record